*1 – 2329 mem opp*

FILED

Nov 10  3 25 PM '03

U.S. DISTRICT COURT
NEW HAVEN, CONN.

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CARL MARCHELLO                                :        NO.: 301CV2329 PCD
                                              :
v.                                            :
                                              :
                                              :
CHASE MANHATTAN AUTO FINANCE                  :
CORPORATION and JOHN McKENNA                  :        October 30, 2003

### DEFENDANT'S MEMORANDUM OF LAW
### IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant John McKenna hereby objects to the plaintiff's Motion to Compel dated

October 3, 2003.  In support of his objection, the defendant submits the following

Memorandum of Law.

**Introduction**:

This case arises out of a motor vehicle accident that occurred on February 5, 2001

on Interstate 95 in Westbrook, Connecticut.  In his Complaint, the plaintiff alleges that

defendant McKenna was negligent in the operation of his vehicle and that, as a result, the

plaintiff sustained certain injuries.

On June 17, 2003, the plaintiff served upon the defendants several interrogatories

and one (1) production request seeking information with respect to any surveillance of the

plaintiff conducted by the defendants.   On July 15, 2003, defendant McKenna objected to

the plaintiff's discovery requests on the grounds that the requests were "overly broad,

seeks attorney work product and seeks information prepared in anticipation of litigation

HOWARD, KOHN SPRAGUE & FITZGERALD, LLP • ATTORNEYS-AT-LAW
237 BUCKINGHAM STREET • P.O. BOX 261798 • HARTFORD, CT 06126-1798 • (860) 525-3101 • JURIS NO. 28160

without showing substantial need or hardship".    For the following reasons, the defendant

respectfully submits that the objections should be sustained:

**Argument:**

As pointed out by the plaintiff in his brief, the rules of discovery were designed to

encourage liberal pre-trial disclosure in order to make trial "less of a game of blindman's

bluff and more a fair contest with the basic issues and facts disclosed to the fullest

practicable extent." *See*, Weinhold v. Witte Heavy Lift, Inc. et al., 90 CIV. 2096 (PLK) 1994

WL 132392 (S.D.N.Y., 1994) (copy attached as Exhibit A) (*citing*, United States v. Proctor

& Gamble Co., 356 U.S. 677, 682 (1958)).  Discovery, however, is not without its

limitations.  In the case of Hickman v. Taylor, 329 U.S. 495, 510 (1947), the United States

Supreme Court recognized a qualified immunity from discovery from the work product of a

lawyer and that such materials could only be discovered upon a substantial showing of

necessity or justification.  Weinhold, *supra*, at *2 (*citing*, F.T.C. v. Grolier, Inc., 462 U.S.

19, 24 (1983)).

The holding in Hickman "has largely been embodied in Fed.R.Civ.P. 26(b)(3), which

outlines 'the extent to which trial preparation materials are discoverable in federal court."

Id. Fed.R.Civ.P. 26(b)(3) states, in pertinent part, that:

> a party may obtain discovery of documents and tangible things...prepared in
> anticipation of litigation or for trial by or for another party or by or for that other
> party's representative (including the other party's attorney, consultant, surety,

2

**indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.**

Fed.R.Civ.P. 26(b)(3) (emphasis added).  "Rule 26(b)(3) makes clear that the work product doctrine protects work done in anticipation of litigation or trial by an attorney, as well as a party or other agents of the party or its representative" which would include someone conducting surveillance of a plaintiff at the request of a party or his attorney.  Weinhold, supra, at *2 (citing, United States v. Nobels, 422 U.S. 225, 238-39 (1976)).

In this case, the plaintiff, by way of his interrogatories, seeks information as to: whether the defendants or their agents have conducted or attempted to conduct surveillance activities of the plaintiff; where such activities took place; the name and address of the person who attempted such activities; the name of the person's employer; the dates of such activities; whether any notes were made of the activities; whether any photographs, videos or movies were made of the plaintiff; and the dates on which surveillance activities were conducted that failed to result in the production of any notes, photographs, videotapes or motion pictures.  These requests are clearly aimed at discovering the details of any surveillance activities requested by the defendant.

In his one production request, the plaintiff requests the defendants to produce "all photographs, videotapes, motion pictures and surveillance observation notes or reports

3

generated by your attempts to conduct surveillance or observe Plaintiff's herein currently in your possession or generated at a later date." This request is clearly seeks the production, not only of any photographs, videos or pictures of the plaintiff, but any notes or reports generated by the defendants' agents in connection with any surveillance activities.

The defendant maintains that if any such activities were conducted, they were conducted at the request of his attorneys in anticipation of trial. In order to earn the status of "work product," the material or information "must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." Weinhold, supra, at *2 (quoting, In Re Grand Jury Subpoenas Dated Dec. 18, 1981, etc., 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)). Once it is determined that the material is work product, the burden then shifts to the party seeking disclosure to demonstrate a substantial need for the material and that he is unable without undue hardship to obtain the substantial equivalent by other means. Id. See also, Fed.R.Civ.P. 26(b)(3). The plaintiff in this case has failed to make any showing whatsoever that there is a substantial need for the information or that he is unable to obtain the substantial equivalent by other means.

In his brief, the plaintiff makes the bold assertion that "Connecticut cases overwhelmingly allow the production of surveillance materials." This is simply not the case. In Judson v. Drost, 1999 WL 773803 (Conn. Super., September 10, 1999) (Gaffney, J.)

4

(Copy attached as Exhibit B), the Court denied a plaintiff's motion for supplemental discovery seeking surveillance information and copies of surveillance photographs or videotapes. The <u>Judson</u> Court ruled that the "complaint sets forth nothing that is unusual as to the allegations of negligence or the recital of personal injuries and damages which the plaintiff claims to have sustained." <u>Judson</u>, *supra*, at *1. The Court reasoned that the plaintiff's motion did not "provide a basis to conclude that the standard information covered by the forms [was] inadequate or inappropriate." <u>Id</u>. Additionally, the Court reasoned that, assuming nonstandard discovery was warranted, the surveillance evidence which the plaintiff sought to obtain would fall within the work product doctrine and thereby be privileged from discovery. <u>Id</u>.

Other Connecticut cases in which the Courts have addressed this issue and not allowed the discovery of surveillance materials include: <u>Dzurenda v. Burdo</u>, 1993 WL 148717 (Conn. Super., May 3, 1993) (Lager, J.) (Copy attached as Exhibit C); <u>Spooner v. Champney</u>, 7 Conn. L. Rptr. 25 (1992, Flynn, J.) (Copy attached as Exhibit D); and <u>Kriskey v. Chestnut Hill Bus Company</u>, 1990 WL 284343 (Conn. Super., May 9, 1990) (Landau, J.) (Copy attached as Exhibit E). These courts rely on the Connecticut Practice Book which provides that material, such as surveillance tapes, which are prepared in anticipation of litigation can be procured only upon a showing that the party seeking the discovery "has substantial need of the materials in the preparation of the case and is unable without undue

5

HOWARD, KOHN SPRAGUE & FITZGERALD, LLP • ATTORNEYS-AT-LAW
237 BUCKINGHAM STREET • P.O. BOX 261798 • HARTFORD, CT 06126-1798 • (860) 525-3101 • JURIS NO. 28160

hardship to obtain the substantial equivalent of the materials by other means." *See*,

Practice Book § 13-3, *et seq.* Section 13-3 goes on to state that discovery of such material

shall not be allowed if it would disclose "the mental impressions, conclusions, opinions or

legal theories of an attorney or other representative of a party concerning the litigation." Id.

A more recent case addressing this same issue is <u>Mulvey v. Brennan</u>, 2003 WL

21036810 (J.D. of New Haven, 4/30/03, Gilardi, J.) (Copy attached as Exhibit F.)  In the

decision, Judge Gilardi cites to Practice Book § 13-3 and the <u>Judson</u> case in support of the

proposition that:

> it is not enough for a plaintiff seeking materials gathered in anticipation of
> litigation to express a desire or need to get the materials.  The rule requires a
> showing of substantial need.  Since the plaintiff should already know what
> public physical activities she has carried on, she is able to prepare the
> essentials of her case without any surveillance tapes made by the defendants
> of those same activities.

<u>Mulvey v. Brennan</u>, at *2 (citations and internal quotation marks omitted.)   In the <u>Mulvey</u>

case, the plaintiff was aware that the defendant was conducting surveillance of her activities

and the Court still denied the plaintiff's request for supplemental discovery.  In this case,

there is no allegation or even a suggestion that the defendant has conducted any such

activities.  Furthermore, as stated by the Court in <u>Mulvey</u>, the "plaintiff should already know

what public physical activities she has carried on, she is able to prepare the essentials of

her case without any surveillance tapes made by the defendants of those same activities."

6

## Conclusion

For the reasons stated above, the plaintiff's Motion to Compel should be denied as the information sought is protected by the work product doctrine.

DEFENDANT
JOHN McKENNA

By _____
Thomas P. Cella, Esq.
Howard, Kohn, Sprague & FitzGerald, LLP
237 Buckingham Street
Hartford, CT  06126-0896
860-525-3101
Federal Bar No: ct 04298

7

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed postage prepaid on this day of October, 30 2003 to:

Joel Faxon, Esq.
Stratton Faxon
59 Elm Street
New Haven, CT 06510

Kenneth Williams, Esq.
Gordon, Muir & Foley, LLP
10 Columbus Boulevard
Hartford, CT 06106

Brian Smith, Esq.
Berchem Moses & Devlin, PC
75 Broad Street
Milford, CT 06460

Brian DelGatto, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker
One Stamford Plaza
263 Tressor Boulevard
9th Floor
Stamford, CT 06901

By _____
Thomas P. Cella, Esq.

8

HOWARD, KOHN SPRAGUE & FITZGERALD, LLP • ATTORNEYS-AT-LAW
237 BUCKINGHAM STREET • P.O. BOX 261798 • HARTFORD, CT 06126-1798 • (860) 525-3101 • JURIS NO. 28160

1994 WL 132392
(Cite as: 1994 WL 132392 (S.D.N.Y.))

Page 1

H
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Peter WEINHOLD, Plaintiff,
v.
WITTE HEAVY LIFT, INC. and Bath Iron Works
Corporation, Defendants.

No. 90 CIV. 2096 (PKL).

April 11, 1994.

MEMORANDUM ORDER

LEISURE, District Judge:

*1 Plaintiff, Peter Weinhold, has brought this action seeking damages for injuries he allegedly sustained during the course of his employment with Witte Heavy Lift, Inc. ("Witte") when he fell from a ladder at the Bath Iron Works Corporation ("BIW") facility in Portland, Maine. Plaintiff's allegations against Witte are based upon Witte's alleged failure to provide plaintiff with a seaworthy vessel and appurtenances thereof, and upon the Jones Act 46 U.S.C. § 688, et seq. Plaintiff allegations against BIW are based on general principles of negligence.

Plaintiff has now moved this Court for an order compelling defendant to deliver to plaintiff the following: all of the defendant's surveillance tapes, including out-takes; memoranda and reports prepared in the making of the tapes; audio tapes; drawings; as well as any statements of whatever nature resulting from the surveillance of plaintiff.

Prior to plaintiff's bringing this motion, and after plaintiff's deposition was taken, defendant Witte produced to plaintiff's counsel a copy of the only surveillance tape taken of plaintiff, along with pages 4-6 of the report prepared by the investigator who performed the surveillance. See Defendant Witte's Memorandum in Opposition ("Witte Mem.") at 1. There were no audio tapes or drawings of plaintiff created. Id. For the following reasons plaintiff's motion is hereby denied.

I. Discovery Requests

In the federal courts, the rules of discovery were designed to encourage liberal pre-trial disclosure in order to make a trial "less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." Daniels v. National Railroad Passenger Corporation, 110 F.R.D. 160 (S.D.N.Y.1986) (citing United States v. Procter & Gamble Co., 356 U.S. 677, 682, (1958)); see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 756 F.2d 230, 236 (2d Cir.1985); Schlesinger Investment Partnership v. Fluor Corp., 671 F.2d 739, 742 (2d Cir.1982). However, discovery requests are occasionally granted based only on certain contingencies. In order to protect the value of surveillance tapes as a tool for impeachment of plaintiff's possible exaggeration of his disabilities, courts have found it appropriate to require disclosure of such impeachment materials only after plaintiff's deposition has been taken. In this way, the recording of plaintiff's sworn testimony will preclude any temptation on his part to alter his testimony based on what is seen on the surveillance tapes, yet the policy of broad discovery is nonetheless maintained. See Daniels, 110 F.R.D. at 161 (S.D.N.Y.1986); Blyther v. Northern Lines, Inc., 61 F.R.D. at 611-12; Snead v. American Export-Imbrandtsen Lines, Inc., 59 F.R.D. 148, 151 (E.D.Pa.1973).

That procedure was followed by the litigants in the instant case. Disclosure of the surveillance videotape will allow plaintiff to review the materials for authenticity, and will allow plaintiff to prepare effectively for trial. See also, Martin v. Long Island Railroad Co., 63 F.R.D. 53, 54-55 (E.D.N.Y.1974). Plaintiff will have the opportunity to examine the tape prior to trial, thus affording him the opportunity to prepare for cross examination of the investigator regarding his methods. On March 17, 1994, prior to the disclosure of the tape, defendants took the deposition of plaintiff. Plaintiff's Memorandum at 3. See Daniels, 110 F.R.D. at 161. Defendants have produced to plaintiff all tapes of plaintiff in their possession. See Witte Mem. at 1. [FN1] This disclosure by defendants was the appropriate avenue of discovery, for the parties to follow. See Delaveaux v. Ford Motor Co., 518 F.Supp. 1249, 1252 (E.D.Wis.1981).

II. Investigator's Report

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT A

1994 WL 132392
(Cite as: 1994 WL 132392 (S.D.N.Y.))

Page 2

*2 "In *Hickman v. Taylor,* 329 U.S. 495, 510 (1947), the Court recognized a qualified immunity from discovery for the 'work product of the lawyer'; such material could only be discovered upon a substantial showing of 'necessity or justification.' " *F.T.C. v. Grolier Inc.,* 462 U.S. 19, 24 (1983). The holding of *Hickman* has largely been embodied in Fed.R.Civ.P. 26(b)(3), which outlines "the extent to which trial preparation materials are discoverable in federal court." *Id.* at 25. *See Niagara Mohawk Power v. Stone & Webster,* 125 F.R.D. 578, 585 (N.D.N.Y.1989). Fed.R.Civ.P. 26(b)(3) provides in pertinent part:

> a party may obtain discovery of documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3).

"[T]hree conditions must be met to earn work product protection. The material must (1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *In re Grand Jury Subpoenas Dated Dec. 18, 1981, etc.,* 561 F.Supp. 1247, 1257 (E.D.N.Y.1982). "Once these conditions are satisfied, the party seeking discovery must establish a substantial need for the material and a practical inability to secure the substantial equivalent thereof by alternate means." *Id.*

The definition of the term "representative" in Fed.R.Civ.P. 26(b)(3) goes beyond attorney work product and includes the work product prepared on an attorney's behalf. As the First Circuit stated in *Sprague v. Director of Office of Worker's Compensation,* 688 F.2d 862, 869-70 (1st Cir.1982) , "the Supreme Court noted in *United States v. Nobles,* 422 U.S. 225 (1976), that the work-product doctrine must 'necessarily' apply to materials prepared on an attorney's behalf, *id.* at 239 n. 13, because an attorney must often rely on the assistance of others 'in the compilation of materials

in the preparation for trial.' *Id.* at 238." *Sprague,* 688 F.2d at 870.

By its terms, Rule 26(b)(3) makes clear that the work product doctrine protects work done in anticipation of litigation or trial by an attorney, as well as a party or other agents of the party or its representative. *See, e.g., United States v. Nobles,* 422 U.S. at 238-39 (attorneys often must rely on investigators and work product doctrine applies to materials prepared by such agents); *Sterling Drug Inc. v. Harris,* 488 F.Supp. 1019 (S.D.N.Y.1980) (privilege extends to documents prepared by agent of attorney responsible for coordinating and gathering evidence in anticipation of hearing).

*3 In the instant case, plaintiff seeks to discover the contents of defendants' surveillance reports. Upon a thorough *in camera* review of these reports, this Court concludes that the report and log, prepared on behalf of defendants' counsel by an investigator, clearly satisfy the three conditions, outlined above, which must be met in order to earn work product protection. *See In re Grand Jury Subpoenas,* 561 F.Supp. at 1257. Upon finding that the surveillance reports are covered by the work product doctrine, the burden then shifts to plaintiff to demonstrate a substantial need for the reports and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *Id.;* Fed.R.Civ.P. 26. Plaintiff has failed to make the showing which would suffice, in order to have the remaining pages of the investigator's report discovered. As discussed above, defendants have provided plaintiff with a portion of the report, plaintiff's motion to compel defendants to produce the remaining pages is denied.

Additionally, plaintiff's request for the production of "any statements of whatever nature resulting from the surveillance of plaintiff," Plaintiff's Memorandum at 2, which this Court construes as an additional request for the investigator's report and a request for attorney work product, related to the report, is also denied.

Conclusion

For the foregoing reasons, plaintiff's motion to compel the production of additional tapes or out-takes is denied. Plaintiff's motion to compel production of the investigators report, and related statements is also denied.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

.1994 WL 132392
**(Cite as: 1994 WL 132392 (S.D.N.Y.))**

SO ORDERED

> FN1. Defendant contends that there are no other tapes of plaintiff, nor any out-takes. Witte Mem. at 1. Accordingly, plaintiff's request for these additional tapes is denied as moot.

1994 WL 132392, 1994 WL 132392 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 773803 (Conn.Super.))

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut.

Tracey **JUDSON**,
v.
Mark **DROST**, et al.

No. CV 990493618S.

Sept. 10, 1999.

MEMORANDUM OF DECISION

GAFFNEY.

*1 Before the court is the plaintiff's motion for
permission to obtain supplemental, nonstandard
discovery. Specifically, the plaintiff wishes to
confirm that the defendant subjected her to
surveillance and, if so, to obtain the product of such
surveillance (i.e., photographs, audio or video
tapes) and related information. The defendant
objects to furnishing any of what is sought.

The complaint describes a somewhat typical
collision between two vehicles traveling in opposite
directions on a public highway. More particularly,
the accident is alleged to have occurred when the
defendants' vehicle crossed the centerline into the
plaintiff-driver's lane of travel causing the two
vehicles to collide.

The complaint sets forth nothing that is unusual as
to the allegations of negligence or the recital of
personal injuries and damages which the plaintiff
claims to have sustained.

Practice Book Sections 13-6(b) and 13-9(a)
provide that in all personal injury actions alleging
liability based on the operation or ownership of a
motor vehicle, requests for answers to
interrogatories and for production, inspection, and
examinations of tangible items shall be limited as
set forth in specified numbered Forms of the

Practice Book. Other, nonstandard discovery is not
permitted unless it is judicially determined that what
is prescribed by the forms is inappropriate or
inadequate in the particular case.

It is the court's finding that the plaintiff's motion
does not provide a basis to conclude that the
standard information covered by the forms is
inadequate or inappropriate.

In addition to the above and addressing the crux of
the dispute, the court finds that surveillance
evidence which the plaintiff seeks to obtain would
fall within the work product doctrine and thereby be
privileged from discovery. The court is
unpersuaded that the exception to the rule
("Substantial need" and "undue hardship" as
described; P.B., Sec. 13-3) is controlling. In this
regard the court concurs with the well-reasoned
conclusion of Judge Flynn in his ruling on a similar
issue:

It is not enough for a plaintiff seeking materials
gathered in anticipation of litigation to express a
desire or need to get the materials. The rule requires
a showing of substantial need. Since the plaintiff
should already know what public physical activities
she has carried on, she is able to prepare the
essentials of her case without the immediate need to
see any surveillance tapes made by the defendants
of those same activities. Furthermore, she has not
shown any hardship, much less the 'undue hardship'
that [Sec. 13-3] contemplates, which would prevent
her from taping her own physical activities.

*Sponner v. Champney*, 7 CONN.L.RPTR. 25, 7
CSCR 840, 841 (July 2, 1992).

Accordingly, the plaintiff's motion is denied.

1999 WL 773803 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT B

Not Reported in A.2d
(Cite as: 1993 WL 148717 (Conn.Super.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of Fairfield, at Bridgeport.

Linda **DZURENDA**, et al.
v.
Jason **BURDO**, et al.

No. CV 93-0300496S.

May 3, 1993.

RULING ON PLAINTIFF'S REQUEST FOR SUPPLEMENTAL DISCLOSURE AND PRODUCTION

LAGER, Judge.

*1 On March 12, 1993, the plaintiff filed a motion seeking permission for discovery in addition to that provided in the standard interrogatories and requests for production, Practice Book §§ 223, 227, as well as five supplemental interrogatories and three supplemental production requests. The defendant duly objected to any supplemental discovery. At oral argument on April 5, 1993, the court ruled on all the defendant's objections except those directed to the plaintiff's first supplemental interrogatory and first supplemental request for production.

The plaintiff's first supplemental interrogatory requests the following information:
    Please state whether you conducted an investigation or surveillance relative to this action or the conduct of any plaintiff, a party to this action, and, if so, please state:
    a. the dated [sic] on which it was conducted;
    b. the identity of each person who participated in it;
    c. whether a record, report, or videotape of the result was prepared and, if so, the identity of the person who has custody of each record, report or videotape.
    (Emphasis supplied)

The plaintiff's first supplemental request for production requests the following:
    Produce copies of the results of each investigation or surveillance conducted by you, relative to this action.
    (Emphasis supplied)

The defendant has objected to this supplemental discovery on three grounds: (1) The requested material is attorney work-product and therefore privileged. (2) The plaintiff has failed to demonstrate that the circumstances of this case, a standard personal injury case arising out of a motor vehicle accident, are so unusual that the standard interrogatories and requests for production will not suffice. (3) The plaintiff has failed to comply with the requirements of Practice Book § 219.

As worded the plaintiff's first supplemental interrogatory is exceedingly broad, requesting the defendant to reveal any "investigation or surveillance relative to this action" and whether "a record, report or videotape of the results was prepared." Likewise, the first supplemental request for production broadly requests "the results of each investigation or surveillance conducted by you." Investigation relative to the action encompasses any observations, detailed inquiry or systematic examination made in connection with the case. *See* The American Heritage Dictionary of the English Language.

In casting such a broad net, these discovery requests certainly would catch some of the materials constituting the defense attorney's preparation for trial which justifiably could be termed work-product. The plaintiff in no way has justified her request for such broad supplemental discovery. [FN1]

> FN1. It appears that the discovery requested and granted in *Davis v. Daddona*, CV 89 0102503 (Lewis, J. April 2, 1990), which the plaintiff relies on, was limited to "surveillance movie or video tape films." Since Judge Lewis found that such films could be used for impeachment, he found them to fall within the provisions of Practice Book §§ 218 and 219 and ordered discovery subsequent to the taking of the plaintiff's deposition.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

EXHIBIT C

Not Reported in A.2d
(Cite as: 1993 WL 148717 (Conn.Super.))

Read as a whole, Connecticut's rules of discovery clearly place the burden on the moving party to request discovery within the strictures of the rules. *See* Practice Book §§ 218, 219, 223, 227. In this case, the plaintiff has asserted that the requested discovery "would be of assistance in the prosecution of this lawsuit and can be obtained and provided by the defendant with substantially greater facility than could otherwise be obtained by the plaintiffs" in apparent reliance on the language of Practice Book § 218. Mere repetition of the Practice Book language does not satisfy the movant's burden to explain to the court why the factual circumstances of this case are such that the standard discovery provided for in these types of cases will not suffice.

*2 To the extent the plaintiff's broad requests here can be limited to a request for surveillance tapes only, this court notes Judge Flynn's apt remarks in *Spooner v. Champney*, 7 CSCR 840, 841 (July 20, 1992): "Since the plaintiff should already know what public physical activities she has carried on, she is able to prepare the essentials of her case without the immediate need to see any surveillance tapes made by the defendants of those same activities." Moreover, in light of the broad language which plaintiff has chosen to use, this court refuses to limit the plaintiff's supplemental interrogatory and production request to discovery of only surveillance films.

For the foregoing reasons, the defendant's objections to the plaintiff's first supplemental interrogatory and first supplemental request for production are sustained and the discovery is denied.

1993 WL 148717 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

mandates that the notice in the present case is untimely, that the action of the Commission is void, and that this appeal must be sustained.

Compliance with statutorily prescribed notice requirements is a prerequisite to a valid action by a land use commission and failure to give proper notice constitutes a jurisdictional defect.

*Wright v. Zoning Board of Appeals*, 174 Conn. 488, 491.

Having failed to give a proper notice, the Commission lacked jurisdiction and therefore its approval on November 4, 1991 was a nullity. Were this the only issue, the appeal would be sustained without further comment. However, the individual defendants have raised the issue of automatic approval by reason of the failure of the Commission to render a timely decision.

In their brief the Hassigs and Mr. Foley claim:

If the notice of the hearing was defective it follows that no decision of the Litchfield Planning and Zoning Commission (hereinafter Commission) was rendered within the time limits of C.G.S. §8-7(d) and therefore the site plan/special exception application was automatically approved pursuant to C.G.S. §8-3(g) and §8-3c(b).

Similarly, in the instant appeal, the alleged failure of timely pre-hearing notice means that no hearing was held and no decision rendered within the time limits imposed by C.G.S. §8-7d(a) and therefore the application is automatically approved under C.G.S. §§8-3(g) and 8-3c(b). If notice of the hearing was ineffective, then it was as if the PZC failed to ever render a timely decision as required by C.G.S. §8-7d(a).

General Statutes 8-3c provides in pertinent part that "the zoning commission . . . shall hold a public hearing on an application or request for a special permit or special exception . . ." and further that "such commission shall decide upon such application or request within the period of time permitted under Section 8-7d." That section states in part that "all decisions on such matters shall be rendered within sixty-five days after the completion of such hearing."

The consequence of a statute that imposes a mandatory time constraint for actions by a zoning commission is that, when the time has expired without a decision, approval of the application is automatic. *SSM Associates Limited Partnership v. Plan and Zoning Commission*, 15 Conn.App. 561 (1988), *aff'd*, 211 Conn. 331 (1989); *Carr v. Woolwich*, 7 Conn.App. 684 (1986), *cert. denied* 201 Conn. 804 (1986); *Vartuli v. Sotire*, 192 Conn. 353, 365 (1984). The consequence of a failure to comply with statutory pre-hearing notice requirements of a subdivision application is automatic approval. *Koskoff v. Planning and Zoning Commission*, 27 Conn.App. 443 (1992).

Accordingly, if the Commission did not act, the application would be automatically approved. On the facts of this case, such is not the situation. Hearings were held on five dates from September 9, 1991 to October 21, 1991. Thereafter, the Commission approved the application on November 4, 1991. The vote of approval of November 4, 1991 constituted action for the purposes of General Statutes §8-7d. The fact that it was ineffective by reason of a defective notice and therefore null and void does not negate the fact that the commission acted within the statutory time. As stated in *Farr v. Eisen*, 171 Conn. 512, at 516:

Here, the commission did render a decision and therefore "acted" within the meaning of the statute. There is a marked difference between "non-action" and an action which is ultimately declared "null and void." *Nothing can be declared void if it was not first in existence. There must be action of some kind before it can be declared invalid.* Although the commission's decision is invalid, that decision did in fact constitute action. (Emphasis added.)

Finally, the court notes that counsel for the defendants participated in all hearings and at no time raised the question of a defective notice. It would indeed be a bizarre result if after participating in numerous lengthy hearings, counsel could later claim, had the commission denied the application, that it was approved by operation of law. See *Basko v. DeFilippo*, 162 Conn. 462, 469 (1972); *State v. Huff*, 10 Conn.App. 330, 337 (1987).

For the reasons set forth, the appeal is sustained.

---

### Leslie A. Sponner et al v. Stuart W. Champney et al

Superior Court at Milford
No. CV92 038566S
Memorandum Filed July 2, 1992

**Discovery – Specific Information – Surveillance Tapes – Disclosure Not Required in Personal Injury Action.** P.B. §219 does not require disclosure of surveillance tapes in a personal injury case taken by the defendant of the plaintiff's public activities.

**Discovery – Privileges – Mental Impressions – Exception Not Limited to Mental Impressions of Attorneys.** The exception to disclosure for mental impressions and legal theories formed in preparation for trial is not limited to the impressions and theories of attorneys but applies to those of other representatives defined in P.B. §216.

FLYNN, J. The defendant has raised the issue whether surveillance tapes made of the plaintiff by the defendant are discoverable and must be produced by the plaintiff.

The plaintiff, Leslie A. Sponner, has brought suit to recover for certain personal injuries sustained when her vehicle was struck by the defendant's truck.

The plaintiff seeks discovery and production of the following information from the defendant:

# EXHIBIT D

Please state whether you conducted an investigation or surveillance relative to this action or the conduct of any plaintiff, a party to this action, and if so please state:

a. The date on which it was conducted;

b. The identity of each person who participated in it;

c. whether a record, report or videotape of the results was prepared, and if so, the identity of the person who has custody of each such record, report or videotape.

The defendants have objected, not on the basis of attorney-client privilege or "work product" doctrine, but on the basis that the inquiry seeks information prepared in anticipation of litigation without showing of substantial need and hardship contrary to Practice Book §219. Because the court finds the plaintiff has not shown the required "substantial need" to be provided with documentation of her public physical activities to prepare her case because she herself as the person who carried them on should already be aware of what they were, and further because such an order requiring continuing disclosure of them now would inevitably result in an order in violation of the rule against impermissible disclosure of the mental impressions or theories of the defendants or their attorneys or agents, the defendants' objections are sustained.

Personal injury cases typically take anywhere from months to years to wind their way through the judicial system. Where a plaintiff claims a disability, he or she is presumably familiar with how that disability impacts daily life, and limits activity, more so than the defendant.

Section 218 of the Practice Book permits discovery of information "material to the mover's cause of action . . ." which is "not privileged" if the "disclosure sought would be of assistance" in the prosecution of the action and if it can be provided by the party against whom discovery is sought "with substantial greater facility than it could otherwise be obtained by the party seeking disclosure."

Section 219 of the Rules of Practice permit discovery of material prepared in anticipation of litigation[1] only on a showing that: (1) there is substantial need of the material in the preparation of this case and (2) that [s]he is unable without undue hardship to obtain the "substantial equivalent" of the materials by other means, (3) and provided no disclosure of the mental impressions, conclusions or legal theories of an attorney or other representative such as insurer, concerning the litigation results from the court ordered discovery. See P.B. 219; P.B. 216. It is clear that as to this third aspect of the rule that the prohibited disclosure of the strategic mental impressions, conclusions or legal theories apply under this revised portion of the rule, not just to attorneys but to other representatives.

Orders to answer interrogatories are continuing orders and a party has a continuing duty to supplement answers as new information becomes available. The trial and preparation for it in an adversary system can only be justified as a search for the truth. A defendant should be permitted to surveil the public physical activities of a party plaintiff to a lawsuit and thereby document evidence which rebuts claims of physical disability. The plaintiff already knows what activities she or he has carried on and if a plaintiff is alerted by the defendant's continuing discovery answers to the documentation of physical movements which belie the claims she or he has made in the lawsuit, the likelihood is that while the case is pending the plaintiff's public physical activities will be diminished and tailored to meet the claims. The "substantial need" contemplated for the requirement of Rule 219 is one going to the essentials of preparation of the case. It is not enough for a plaintiff seeking materials gathered in anticipation of litigation to express a desire or need to get the materials. The rule requires a showing of *substantial* need. Since the plaintiff should already know what public physical activities she has carried on, she is able to prepare the essentials of her case without the immediate need to see any surveillance tapes made by the defendants of those same activities. Furthermore, she has not shown any hardship, much less the "undue hardship" that Rule 219 contemplates, which would prevent her from taping her own physical activities. Finally, a court order issued now would have the impermissible but certain effect of disclosing the mental impressions of the defendants, or their attorney or insurer representatives in violation of Rule 219 if each tape had to be disclosed after being filmed or made, for the only logical inference to be drawn would be that the defendants or their attorneys or agents were contemplating a defense based on their impressions that the plaintiff's claimed physical disabilities were exaggerated or nonexistent.

Finally, although the parties have argued the videotape aspects of it, the interrogatory is so broad in terms of encompassing any and all investigations made by the defendants or their representatives as to be burdensome and unfair. Read literally, the defendants would be required to tell the plaintiff everything done to prepare a defense to the case.

The defendants' objection is therefore sustained.

Nothing in this order should be construed to affect the trial judge's ability to order all proposed exhibits to be premarked for identification only, shortly before trial.

---

[1] Recent modifications of our rules of practice make the interpretation of the phrase "material prepared in anticipation of litigation" a question of interpretation of their clear and unequivocal terms. If the judges of the Superior Court had intended to limit the qualified protection of such materials to only those prepared by or at the direction of lawyers they could have, should have and certainly would have said so. They did not, but instead adopted a wider coverage under the

definitions set out in Rule 216. This court will therefore interpret the rules according to their plain meaning without encrusting its interpretation with barnacles borrowed from some textually distinct federal rule.

Section 216 of the Connecticut Practice Book reads, in relevant part, " 'representative' includes agent, attorney, consultant, indemnitor, insurer, and surety." (P.B. 1963, Sec. 167; 1978.)

---

## Henry H. Bridgeforth v. Fleet Bank of Connecticut

Superior Court at New Haven
No. 317612
Memorandum Filed June 29, 1992

**Trade Regulation – Unfair Trade Practices Act – Banks – Act Not Applicable.** CUTPA, CGS §42-110a et seq., does not apply to banks.

HADDEN, J. On December 23, 1991, the plaintiff, Henry H. Bridgeforth, filed a five-count revised complaint against the defendant Fleet Bank of Connecticut. All five counts allege that the defendant is a financial institution within the meaning of General Statutes §36-9j(b), and that the plaintiff was a customer within the meaning of General Statutes §36-9j(a). Count one alleges that between July 1, 1990 and October 8, 1990, the defendant disclosed financial records as defined by General Statutes §36-9j(c) to Vincent Turley, in violation of General Statutes §36-9k. Counts two, three, four and five allege that between July 1, 1990 and October 8, 1991, the defendant disclosed confidential information and/or records in its possession concerning the plaintiff to Vincent Turley. Count two sounds in negligence, alleging that the defendant failed to use reasonable care in safeguarding the privacy and confidentiality of information and records in its possession concerning the plaintiff. Count three alleges that the defendant intentionally violated the plaintiff's right to privacy. Count four alleges that the defendant breached an implied contract, which, inter alia, provided that the defendant would hold and maintain money in its custody for the plaintiff and would protect the plaintiff's privacy and confidentiality regarding such money to the extent provided by state and federal law. Count five, the subject of the instant motion to strike, alleges that the defendant was engaged in trade and commerce as defined by General Statutes §42-110a, and that the defendant made the alleged disclosures without notification to the plaintiff, which constituted unfair and deceptive acts and practices in violation of Connecticut General Statutes, the Connecticut Unfair Trade Practices Act (CUTPA). The defendant has filed a motion to strike count five on the ground that it is legally insufficient because CUTPA does not apply to banks. The defendant and the plaintiff have each filed a memorandum of law in support of and in opposition to the motion to strike, respectively.

The function of a motion to strike is to challenge the legal sufficiency of the allegations set forth in the pleadings. *Ferryman v. Groton*, 212 Conn. 138, 142, 561 A.2d 432 (1989). Specifically, a motion to strike is the proper manner in which to raise a claim as to the legal sufficiency of the allegations of "any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted . . ." Practice Book §152(1). "It is incumbent on a plaintiff to allege some recognizable cause of action in his complaint." (Citation omitted.) *Brill v. Ulrey*, 159 Conn. 371, 374, 269 A.2d 262 (1970).

The defendant and the plaintiff in their respective memoranda acknowledge a split of authority in the superior court regarding whether CUTPA applies to banks, and that the issue has not yet been addressed by an appellate court. Each party urges the court to follow those decisions which support its position.

General Statutes §42-110b(a) provides in relevant part: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." A "person" is defined as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity . . ." General Statutes §42-110a(3). "Trade" and "commerce" is defined as "the advertising, the sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value in this state." General Statutes §42-110a(4).

CUTPA is a remedial statute and must be construed liberally to effectuate its public policy objectives. *Web Press Services Corporation v. New London Motors, Inc.*, 203 Conn. 342, 354, 525 A.2d 57 (1987). The statute provides, inter alia, the following relevant exception: "Transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the State or of the United States . . ." General Statutes §42-110c(a)(1).

Generally, cases which hold CUTPA does not apply to banks do so because banks are expressly exempt from the Federal Trade Commission Act ("FTCA"), from which CUTPA is derived, and because banks are already subject to pervasive statutory regulation. See, e.g., *Evervest, Inc. v. Advest Bank*, 4 CONN. L. RPTR. 326 (1991) (Wagner, J.); *Washington Trust Co. v. Alland Associates*, 3 CONN. L. RPTR. 447 (1991) (Leuba, J.); *Bristol Savings Bank v. Sattler*, 4 CSCR 351 (1989) (Aronson, J.); *People's Bank v. Horesco*, 1 CSCR 62 (1986) (Jacobson, J.); aff'd on other grounds, 205 Conn. 319 (1987).

The majority of superior court cases have held that banks are subject to CUTPA, particularly when they are engaged in consumer-oriented activities. These cases generally reason that: (1) the legislature did not expressly include the FTCA bank exemption in CUTPA; and (2) in *Web*, the Supreme Court explicitly stated

Not Reported in A.2d
(Cite as: 1990 WL 284343 (Conn.Super.))

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Edward J. KRISKEY, et al.
v.
CHESTNUT HILL BUS COMPANY, et al.

No. CV87 0090900 S.

May 9, 1990.

MEMORANDUM OF DECISION
RE: MOTION FOR PROTECTIVE ORDER (# 205)
MOTION TO QUASH (# 206)

LANDAU, Judge.

*1 Plaintiffs brought this action against defendants arising out of a November, 1986 automobile accident. The accident occured in Stamford. Plaintiff, Edward Kriskey, claims that he sustained an aggrevation of a pre- existing back condition which has rendered him incapacitated and unable to work.

Counsel for defendants retained Beneficial Investigative Service, Inc. [Beneficial] to monitor Kriskey's activities. Plaintiffs now seek to depose Beneficial Investigation Services, Inc. and obtain its complete file, including photographs and correspondence between counsel and Beneficial, regarding Beneficial's surveillance activities as they relate to the plaintiff. In response to plaintiffs' discovery and deposition requests defendants filed a Motion for Protective Orders and Beneficial filed a Motion to Quash.

Defendants and Beneficial argue that the deposition of Beneficial Investigative Services, Inc. and the production of surveillance material should not be ordered on the grounds that the material in Schedule A was obtained at the direction of counsel in anticipation of litigation and that the discovery of this material will prejudice the defense of this case.

Connecticut Practice Book § 243 provides for depositions generally.

In addition to other provisions for discovery and subject to the provisions of § 217, any party who has appeared in a civil action, ... where the court finds it reasonably probable that evidence outside the record will be required, may, at any time after the commencement of the action or proceeding, in accordance with the procedures set forth in this chapter, take the testimony of any person, including a party, by deposition upon oral examination.

Conn. Practice Bk. § 243 (rev'd to 1989). Because depositions are subject to the provisions regarding the scope of discovery, § 219 applies to the instant question of defendants' materials prepared in anticipation of litigation. Section 219 provides in pertinent part,

[A] party may obtain discovery of documents and tangible things otherwise discoverable under Sec. 218 and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Conn. Practice Bk. § 219 (rev'd to 1989). Although, plaintiffs cannot obtain the specific photographs and surveillance that defendants made, the plaintiffs are in the best position to make their own videos and photographs concerning Kriskey's physical activities during the period after the injury. Plaintiffs have not demonstrated a substantial need of the surveillance activities and photographs in the preparation of plaintiffs' case. Plaintiffs are able without undue hardship to obtain the substantial equivalent of the materials by other means. Consequently, plaintiffs have not complied with § 219 and defendants and Beneficial are not required to turn over the requested material.

*2 Upon motion by a party from whom discovery is sought, and for good cause shown, the court may make an order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; ... (4) that certain matters not be inquired into, or

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT E

Not Reported in A.2d
**(Cite as: 1990 WL 284343 (Conn.Super.))**

that the scope of the discovery be limited to certain matters....

Conn. Practice Bk. § 221 (rev'd to 1989). "The party seeking to bar a deposition must make a threshold showing that there is 'good cause' that the protective order issue." *Associated Construction Co., Inc., v. City of Milford, Ct,* 4 CSCR 130, 131 (1989). "The showing must involve a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.". *Id.* Defendants and Beneficial argue that to allow plaintiff to depose Beneficial and have access to defendants' surveillance reports and photographs prior to the time of trial would unduly prejudice the defense of the instant case. Specifically, the plaintiffs would be forewarned of the defendants' knowledge of plaintiffs' activities after the accident as it related to his claimed injuries and damages. The court finds that the defendants and Beneficial have shown good cause and that the protective order will issue.

1990 WL 284343 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
34 Conn. L. Rptr. 530
(Cite as: 2003 WL 21036810 (Conn.Super.))

Page 1

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of New Haven.

Margaret MULVEY,
v.
Kristen BRENNAN et al.

No. CV010445849.

April 30, 2003.

Parrett Porto Parese & Colwell PC, Hamden, CT,
for Margaret Mulvey.

Edward Gasser, Avon, CT, for Kristen Brennan.

Edward Gasser, Avon, CT, for Frances Brennan.

GILARDI, J.

*1 On December 6, 2000, the plaintiff, Margaret
Mulvey, filed a one-count complaint against the
defendants, Kristen Brennan and Frances Brennan.
This action arises from injuries and losses allegedly
sustained as a result of an automobile accident in
Trumbull, Connecticut.

The complaint alleges that on March 20, 2000,
Mulvey was operating her automobile on the
southbound exit 10 ramp from Route 8 in Trumbull.
Kristen Brennan was operating an automobile
owned by Frances Brennan on the same exit ramp,
directly behind Mulvey. The complaint alleges that
as a result of Kristen Brennan's negligent operation,
Frances Brennan's vehicle collided with the rear of
Mulvey's vehicle, causing Mulvey to sustain
considerable physical and emotional injuries and
loss of income.

On February 18, 2003, Mulvey filed a motion for
protective order and a motion for permission to file
nonstandard discovery requests, [FN1] claiming
that Kristen Brennan and Frances Brennan
conducted private surveillance of her activities on at
least two separate occasions and that she desires to

determine specifically what surveillance they
obtained. On March 11, 2003, Kristen Brennan and
Frances Brennan filed objections to both motions.

FN1. Mulvey's motion for permission to
file nonstandard discovery requests was
filed in accordance with Practice Book §
13-6(b), which provides in relevant part
that "[i]n all personal injury actions
alleging liability based on the operation or
ownership of a motor vehicle ... the
interrogatories shall be limited to those set
forth in Forms 201, 202 and/or 203 of the
rules of practice, unless upon motion, the
judicial authority determines that such
interrogatories are inappropriate or
inadequate in the particular action."

DISCUSSION

"Upon motion by a party from whom discovery is
sought, *and for good cause shown,* the judicial
authority may make any order which justice
requires to protect a party from annoyance,
embarrassment, oppression, or undue burden or
expense ..." (Emphasis added.) Practice Book § 13-5
. "[T]he party seeking to bar [discovery] must make
a threshold showing that there is 'good cause' that
the protective order issue ... The showing must
involve a particular and specific demonstration fact,
as distinguished from stereotyped and conclusory
statements." (Citation omitted; internal quotation
marks omitted.) *Clarkson v. Greentree Toyota
Corp.,* Superior Court, judicial district of Danbury,
Docket No. CV 0311823 (April 20, 1993, McGrath,
J.) (8 C.S.C.R. 515, 516). "The trial court has wide
discretion in its rulings on evidence ..." (Internal
quotation marks omitted.) *State v. Robinson,* 227
Conn. 711, 732, 631 A.2d 288 (1993).

In her motion for protective order, Mulvey
represents that the two occasions on which she was
placed under surveillance caused her "[concern] for
her health, safety and welfare and ... considerable
emotional distress and upset." (Mulvey's Motion for
Protective Order, p. 1.) Mulvey further alleges that
she "found the fact that she was being spied on to
be highly unnerving, particularly in light of the
current state of world affairs." (Mulvey's Motion for
Protective Order, p. 1.) The motion is

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

# EXHIBIT F

Not Reported in A.2d
34 Conn. L. Rptr. 530
(Cite as: 2003 WL 21036810 (Conn.Super.))

Page 2

unaccompanied by affidavits, medical records or any other evidentiary submissions, and Mulvey's allegations, by themselves, do not constitute "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," sufficient for a showing of good cause as required by Practice Book § 13-5. See *Clarkson v. Greentree Toyota Corp., supra,* at 8 C.S .C.R. 516. The motion for protective order is therefore denied.

**\*2** With regard to Mulvey's motion for permission to file nonstandard discovery requests, Mulvey merely claims that she "wishes to determine with specificity exactly what **surveillance** was conducted and the results and conclusions of such **surveillance** ." (Mulvey's Motion for Permission to File Nonstandard Discovery Requests, p. 1.) Kristen Brennan and Frances Brennan counter that the requested materials are protected by the **work product** doctrine.

"In any civil action ... where the judicial authority finds it reasonably probable that evidence outside the record will be required, a party may obtain ... discovery of information or disclosure, production and inspection of papers, books or documents material to the subject matter involved in the pending action ... Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action *and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure.*" (Emphasis added.) Practice Book § 13-2. "[T]he attorney work product doctrine encompasses work that is essentially the result of an attorney's activities when those activities have been conducted with a view toward litigation." *Metropolitan Life Ins. Co. v. Aetna Casualty & Surety Co.,* 249 Conn. 36, 51- 52 n. 17, 730 A.2d 51 (1999). Tangible materials prepared in anticipation of litigation are discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Practice Book § 13-3.

In the present case, the parties do not dispute that the surveillance was conducted by Kristen Brennan and Frances Brennan in anticipation of litigation.

"[I]t is not enough for a plaintiff seeking materials gathered in anticipation of litigation to express a desire or need to get the materials. The rule requires a showing of substantial need. Since the plaintiff should already know what public physical activities she has carried on, she is able to prepare the essentials of her case without the immediate need to see any surveillance tapes made by the defendants of those same activities." (Internal quotation marks omitted.) *Judson v. Drost,* Superior Court, judicial district of New Britain, Docket No. CV 99 0493618 (September 10, 1999, Gaffney, J.). Mulvey's bald declaration that she "wishes" to obtain the surveillance materials is thus insufficient to constitute a showing of "substantial need" and "undue hardship" as required by Practice Book § 13-3. Her motion for permission to file nonstandard discovery requests is therefore denied.

For the foregoing reasons, the motion for protective order is denied. The motion for permission to file nonstandard discovery requests is also denied. It is so ordered.

2003 WL 21036810 (Conn.Super.), 34 Conn. L. Rptr. 530

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works